UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


LANETTE K. DAVIS,

       Plaintiff,

                                       CASE NO. 4:13-CV-11737
    v.                              JUDGE MARK A. GOLDSMITH
                                       MAGISTRATE JUDGE PAUL KOMIVES

PNC MORTGAGE, a division of
PNC BANK, N.A.,

       Defendant.

_____/


**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT (docket #20)**

I.    <u>RECOMMENDATION</u>: The Court should grant defendant's motion for summary judgment.

II.    <u>REPORT</u>:

A.    *Background*

On September 30, 2008, plaintiff Lanette K. Davis purchased a property located in Grosse Pointe, Michigan. The purchase was financed by a loan from National City Bank, the predecessor to defendant PNC Bank, in the amount of $179,171.00. The loan was secured by a mortgage on the property, and the mortgage was recorded with the Wayne County Register of Deeds. *See* Def.'s Br., Ex. B, Deposition Tr. of Lanette K. Davis, at 15, 17, 18 [hereinafter "Pl.'s Dep."]; Exs. C-E. After plaintiff failed to make her scheduled monthly payments in December 2008 and January 2009, PNC agreed to a forbearance plan, permitting plaintiff to avoid default by making payments of $407 per month. This plan expired in May 2009, and a second plan was agreed to through September 2009. *See* Pl.'s Dep., at 20, 21, 23-24; Def.'s Br., Exs. F-I. In October 2009, plaintiff and PNC agreed to a repayment plan. Under the plan, plaintiff was required to resume payment of her regular principal

and interest amount of $1,132.49 beginning in December 2009, plus $407 per month through February 2010.  *See* Pl.'s Dep., at 26-27; Def.'s Br., Ex. J.  Plaintiff continued to make the $407 payment each month through February 2010, but did not pay the regular mortgage payment of $1,132.49.  Plaintiff has made no other payments on the mortgage.  *See* Pl.'s Dep., at 27; Def.'s Br., Ex. F.  At her deposition, plaintiff testified that she received several letters from PNC in early December 2009 asserting that she was in default.  Plaintiff claims that she contacted PNC regarding these letters, and was told they were sent in error and that she could ignore them.  She was told that the repayment plan was still in effect.  *See* Pl.'s Dep., at 28, 30-32.  On April 19, 2010, PNC served notice on plaintiff that she was in default.  *See* Pl.'s Dep., at 38; Def.'s Br., Ex. K.  Plaintiff applied for a loan modification, but PNC determined that she did not qualify for a loan modification.  *See* Pl.'s Dep., at 37, 39, 41-43, 51; Def.'s Br., Exs. L-M.  PNC then took steps to foreclose on the property pursuant to Michigan's foreclosure by advertisement statute, MICH. COMP. LAWS §§ 600.3204 *et seq.*  *See* Def.'s Br., Exs. N-O.  A Sheriff's sale was held on April 6, 2011, at which PNC purchased the property for $74,911.00.  On October 11, 2011, after the statutory redemption period had expired, PNC transferred the property to the United States Secretary of Veterans' Affairs by warranty deed.  *See id.*, Exs. N, P.

On March 9, 2012, the Secretary commenced an eviction action in the Grosse Pointe Municipal Court.  *See* Def.'s Br., Ex. Q.  Plaintiff defended this action by asserting that (1) PNC did not comply with the notice provisions of MICH. COMP. LAWS § 600.3220; (2) PNC did not properly service her loan; and (3) PNC wrongfully failed to give plaintiff a loan modification.  *See* Pl.'s Dep., at 58-71.  The court found in favor of the Secretary, and entered a judgment of possession requiring plaintiff to vacate the property by April 16, 2012.  *See* Def.'s Br., Ex. R.  On the date she was

scheduled to vacate the property, plaintiff filed an appeal in the Wayne County Circuit Court, raising

the three claims set forth above, and asking the circuit court to set aside the Sheriff's sale. *See* Pl.'s

Dep, at 65, 72-73; Def.'s Br., Exs. S-T. On August 17, 2012, the circuit court entered an order

granting plaintiff's requested relief and setting aside the Sheriff's sale. The circuit court concluded

that PNC had failed to comply with MICH. COMP. LAWS § 600.3220, which governs notice for

adjournments of a Sheriff's sale. The court rejected plaintiff's argument that PNC had violated the

law by declining to modify her loan. *See* Def.'s Br., Ex. U. On November 20, 2012, PNC recorded

an affidavit to set aside the foreclosure and reinstate the mortgage. *See id.*, Ex. V.

Plaintiff commenced the instant action on March 11, 2013, by filing a *pro se* complaint in

the Wayne County Circuit Court. PNC removed the action to this Court on March 17, 2013,

pursuant to 28 U.S.C. §§ 1332, 1441, based on the diverse citizenship of the parties. In her

complaint, plaintiff raises the same three arguments that she raised in the state court eviction action

brought by the Secretary:

1.    PNC failed to provide legal notice of Sheriff Sale as required by MCL 600.3220.

2.    PNC committed errors in the servicing of her mortgage which triggered the acceleration of Plaintiff's mortgage ultimately resulting in foreclosure causing financial injury to the Plaintiff.

3.    PNC failed to convert to a permanent modification after the Plaintiff's successful completion of a written modified payment plan that was supposed to lead to permanent modification.

Compl., p. 1. Plaintiff contends that the foreclosure has harmed her credit, resulting in her being

denied credit or having to obtain credit at higher interest rates, and that she has spent numerous

hours attempting to resolve the issues with her morgtage. Plaintiff seeks over $500,000.00 in

monetary damages, as well as correction of her credit report.

3

The matter is currently before the Court on defendant's motion for summary judgment, filed on September 30, 2013.  Defendant contends that, because it was in privity with the Secretary in the state court action, plaintiff's claims are barred by *res judicata*.  Alternatively, defendant argues that plaintiff has failed to state a cognizable claim upon which relief may be granted.  Plaintiff filed a response to the motion on November 14, 2013.  She argues that her claims are not barred by *res judicata* because PNC was not a party to the state court action and that she is "seeking monetary damages due to the Defendant's unsafe and unsound mortgage practices."  Pl.'s Resp., at 6. Defendant filed a reply on December 2, 2013, and plaintiff filed a sur-reply on December 12, 2013. For the reasons that follow, the Court should grant defendants' motion for summary judgment.

B.     *Legal Standard*

Under Rule 56, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "A fact is material only if its resolution will affect the outcome of the lawsuit."  *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248).  In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor.  *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case."  *Hedrick*, 355 F.3d at 451

4

(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact.  Rather, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325; *see also*, FED. R. CIV. P. 56(c)(1) (moving party may meet its burden by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.").  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e).  To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue.  As the Supreme Court has explained, "[t]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to  return a verdict for that party.  If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  Thus, "[t]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland*, 344 F.3d at 613.

C.      *Analysis*

        Defendant contends that the prior state court eviction action between the Secretary and

5

plaintiff constitutes *res judicata* barring plaintiff's claims here, because it stands in privity with the Secretary. This argument raises difficult questions regarding both the privity rule and the requirement (or lack thereof) of a defendant in a prior action to raise counterclaims or third-party claims to avoid the application of *res judicata*. Because *res judicata* is an affirmative defense, rather than a jurisdictional bar to suit, a court may bypass a difficult *res judicata* question if the case is more easily resolved on the merits. *See Jursar v. Transportation Sec. Admin.*, 751 F. Supp. 2d 154, 165 n.9 (D.D.C. 2010) (citing *Berwind Corp. v. Comm'r of Soc. Sec.*, 307 F.3d 222, 233 n.14 (3d Cir. 2002); *see also*, *In re Franklin Sav. Corp.*, 385 F.3d 1279, 1286 (10th Cir. 2004). Because plaintiff's complaint does not raise any cognizable basis for relief, the Court should take that approach here. Turning to plaintiff's complaint, although she alleges that defendant committed several wrongful acts, and explains how these acts damaged her, she does not indicate on what legal basis defendants are liable to her for monetary damages. Nor does she clarify her legal claims in her response and surreply, other than to claim that defendant engaged in "unsound" mortgage practices. Any legal claim that could arguably be gleaned from plaintiff's complaint fails as a matter of law.

For example, plaintiff contends that defendant violated MICH. COMP. LAWS § 600.3220. This may be true, as found by the Wayne County Circuit Court, but it provides no basis for damages against defendant. Michigan's foreclosure by advertisement statutes do not "'give a plaintiff a cause of action for damages.'" *Stroud v. Bank of America, N.A.*, No. 13-10334, 2013 WL 3582363, at *8 (E.D. Mich. July 12, 2013) (Duggan, J.) (quoting *Dingman v. One West Bank, FSB*, 859 F. Supp. 2d 912, 922 (E.D. Mich. 2012) (Cohn, J.). Nor can plaintiff assert any tort claim against defendant. To prevail on a tort claim, plaintiff must establish that defendant breached a duty it owed to plaintiff that arose "separately and distinctly from the contractual agreement." *Loweke v. Ann Arbor Ceiling*

6

*& Partition Co., L.L.C.*, 489 Mich. 157, 169, 809 N.W.2d 553, 560 (2011). "However, Michigan law is uniformly clear on the point that lenders owe no duty outside of their contractual obligations to borrowers[.]" *Khadher v. PNC, N.A.*, No. 12-14765, 2013 WL 6196949, at *6 (E.D. Mich. Nov. 27, 2013) (Drain, J.); *see also*, *Abo-Hassan v. Gold Star Mortg. Fin. Group, Corp.*, No. 12-14421, 2013 WL 249603, at *3 (E.D. Mich. Jan. 23, 2013) (Cohn, J.). *Ulrich v. Federal Land Bank of St. Paul*, 192 Mich. App. 194, 199, 480 N.W.2d 910, 913 (1991).

To the extent plaintiff seeks damages based on defendant's failure to approve her for a loan modification, she has no claim for relief. The Home Affordable Modification Program (HAMP) and its accompanying regulations do not require mortgage servicers to modify loans, *see Hart v. Countrywide Home Loans, Inc.*, 735 F. Supp. 2d 741, 748 (E.D. Mich. 2010) (Duggan, J.), and even if they did neither the statute nor the accompanying regulations provide a plaintiff with a private right of action against a mortgage servicer, *see id.*; *see also*, *Ahmad v. Wells Fargo Bank, N.A.*, 861 F. Supp. 2d 818, 826-30 (E.D. Mich. 2012) (Cox, J., adopting Report of Michelson, M.J.). Nor did plaintiff have any right to a modification under state law. At most, defendant's failure to offer a loan modification could have entitled plaintiff to convert the foreclosure by advertisement into a judicial foreclosure. *See PNC Mortgage v. Lambert*, No. 302178, 2012 WL 1367575, at *6 (Mich. Ct. App. Apr. 19, 2012).

To the extent plaintiff contends that defendant, through her conversations with defendant's employees, agreed to a modification of the loan or the repayment plan in December 2009, any such claim is barred by Michigan's statute of frauds, which provides that "[a]n action shall not be brought against a financial institution to enforce . . . [a] promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan," unless "the promise or commitment is in

writing and signed with an authorized signature by the financial institution." MICH. COMP. LAWS § 566.132(2)(b). This provision "precludes a party from 'bringing a claim–no matter its label–against a financial institution to enforce the terms of an oral promise.'" *Ahmad*, 861 F. Supp. 2d at 830 (quoting *Crown Technology Park v. D & N Bank, FSB*, 242 Mich. App. 538, 619 N.W.2d 66, 72 (2000)). Plaintiff does not allege that there was any written modification to the repayment plan.

In her response to defendant's motion, plaintiff suggests that defendant committed fraud or misrepresentation through the December 2009 default notices and her conversations with defendant's employees concerning those notices. To the extent her suggestion of fraud is based on any assertion that she would be eligible for loan modification, as explained above such a claim is barred by the statute of frauds. In relevant part, Michigan's statute of frauds provides:

> An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution:
>
> (a) A promise or commitment to lend money, grant or extend credit, or make any other financial accommodation.
>
> (b) A promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation.
>
> (c) A promise or commitment to waive a provision of a loan, extension of credit, or other financial accommodation.

MICH. COMP. LAWS § 566.132(2). "This language is unambiguous. It plainly states that a party is precluded from bringing a claim—no matter its label—against a financial institution to enforce the terms of an oral promise to waive a loan provision." *Crown Tech Park v. D & N Bank, FSB*, 242 Mich. App. 538, 548, 619 N.W.2d 66, 72 (2000). Based on this language, "'[c]ourts in this District have repeatedly held that misrepresentation claims based on alleged promises to modify home

mortgages are barred by the Michigan Statute of Frauds.'" *McCann v. U.S. Bank, N.A.*, 873 F. Supp. 2d 823, 835-36 (E.D. Mich. 2012) (Ludington, J.) (quoting *Loeffler v. BAC Home Loans Servicing*, No. 11-cv-13711, 2012 WL 666750, at *5 (E.D. Mich. Feb. 29, 2012) (Borman, J.) (in turn citing *Jarbo v. BAC Home Loan Servicing*, No. 10-12632, 2010 WL 5173825, *11 (E.D. Mich. Dec. 15, 2010) (Edmunds, J.); *Bingham v. Bank of Am.*, No. 10-11917, 2010 WL 3633925, *2-3 (E.D. Mich. Sept. 14, 2010) (Cox, J.); *Ajami v. IndyMac Mortg. Servs.*, No. 09-13488, 2009 WL 3874680, *2 (E.D. Mich. Nov. 13, 2009) (Cohn, J.))); *see also*, *Liddell v. Deutsche Bank Nat. Trust Co.*, No. 13-13660, 2013 WL 5785888, at *4 (E.D. Mich. Oct. 28, 2013) (Drain, J.)

Further, plaintiff cannot state an actionable claim of fraud. Under Michigan law, the elements of actionable fraud are: "(1) that the charged party made a material representation; (2) that it was false; (3) that when he or she made it he or she knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he or she made it with the intention that it should be acted upon by the other party; (5) that the other party acted in reliance upon it; and (6) that the other party thereby suffered injury." *Novi v. Robert Adell Children's Funded Trust*, 473 Mich. 242, 253 n.8, 701 N.W.2d 144, 152 n.8 (2005). In *Liddell*, *supra*, the plaintiff made the same fraud claim made by plaintiff here, namely, "that the bank made a false representation that he was eligible for a loan modification, the loan modification was denied and Defendant should have known that Plaintiff would not qualify for a modification." *Liddell*, 2013 WL 5785888, at *3.[1] In addition to rejecting this claim on statute of fraud grounds, Judge Drain also

---

[1]Also, as in this case, the plaintiff in *Liddell* alleged that "the bank advised him that he would need to stop making his monthly mortgage payments in order to obtain a loan modification. Plaintiff stopped making his payments and defaulted on his loan." *Id.* at *1 (citation omitted).

explained that the claim failed as a matter of law:

> Plaintiff's fraud claim concerns an alleged broken promise of a future loan modification. However, "an action for fraudulent misrepresentation must be predicated upon a statement relating to a past or an existing fact." *HiWay Motor Co. v. Internat'l Harvester Co.*, 398 Mich. 330, 336, 247 N.W.2d 813 (1976). "Future promises are contractual and do not constitute fraud." *Id.*

*Id.* at *4.

Nor can plaintiff raise a fraud or misrepresentation claim based on the December 2009 conversations because she cannot show how she reasonably relied on any alleged misstatements to her detriment. It is true that the default notices may have misrepresented the state of plaintiff's mortgage account at the time they were sent to plaintiff, but she does not assert that she relied on these statements. Rather, according to petitioner she contacted defendant and was told to disregard those notices. Plaintiff explicitly testified that she was told her repayment plan remained in effect, and that she knew that under the repayment plan she was obligated to make her regular scheduled payment of $1,132.49 on December 15, 2009. *See* Pl.'s Dep., at 27-28, 30, 31-32, 33. Thus, she cannot show that she failed to make her payments as required by the repayment plan in reasonable reliance on any alleged misstatements in the default notices.

Plaintiff likewise has no claim against defendant based on the alleged inaccuracies in her credit report caused by the foreclosure. With respect to federal law, the Fair Credit Reporting Act (FCRA) imposes duties on those who furnish information to credit reporting agencies, *see* 15 U.S.C. § 1681s-2. In particular, § 1681s-2(a) prohibits a furnisher from reporting information the furnisher knows or has reason to know is inaccurate. The private right of action for damages created by the FCRA, *see* 15 U.S.C. §§ 1681n, 1681o, however, generally "is limited to claims against the credit reporting agency; it does not extend to furnishers" of information. *Sanders v. Mountain American*

*Federal Credit Union*, 689 F.3d 1138, 1147 (10th Cir. 2012). In particular, "[subsection] 1681s-2 limits [the] private right of action to claims airsing under subsection (b), the duties triggered upon notice of a dispute from a [credit reporting agency]." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009); *see* 15 U.S.C. § 1681s-2(c). Thus, any right of action under the FCRA against a furnisher of information such as defendant is limited to violations of § 1681s-2(b), which govern a furnisher's duties when it receives notice of a dispute regarding information in a credit report. *See Boggio v. USAA Federal Sav. Bank*, 696 F.3d 611, 615-16 (6th Cir. 2012); *Gorman*, 584 F.3d at 1154. But plaintiff cannot avail herself of that provision here. A furnisher's duties under subsection (b) arise only after it "receiv[es] notice pursuant to section 1681i(a)(2) . . . of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency[.]" 15 U.S.C. § 1681s-2(b)(1). Section 1681i, in turn, requires a credit reporting agency to notify a furnisher of any dispute within five days of receiving notice from the consumer of the dispute. *See* 15 U.S.C. § 1681i(a)(1)(A), (2)(a). Thus, "[a] private cause of action against a furnisher of information does not arise until a consumer reporting agency provides proper notice of a dispute." *Brown v. Wal-Mart Stores, Inc.*, 507 Fed. Appx. 543, 547 (6th Cir. 2012). Importantly, it is not enough that the consumer notifies the furnisher of the dispute; the consumer must notify the credit reporting agency in accordance with § 1681i(a)(1)(A), and "must show that the furnisher received notice from a consumer reporting agency, not the plaintiff, that the credit information is disputed." *Downs v. Clayton Homes, Inc.*, 88 Fed. Appx. 851, 853-54 (6th Cir. 2004). In other words, "[a] private litigant can bring a lawsuit to enforce § 1681s-2(b), but only after reporting the dispute to the [credit reporting agency], which in turn reports it to the furnisher." *Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1059-60 (9th Cir. 2002). Any claim based

11

on § 1681s-2(b) fails as a matter of law because plaintiff "has not alleged that she notified the credit reporting agencies of any inaccuracies on her credit report" or that defendant "received notice of the disputed information" from a credit reporting information. *Gomez v. GMAC Mortg., LLC*, No. 10-13287, 2010 WL 5625673, at *4 (Dec. 15, 2010) (Morgan, M.J.), *magistrate judge's report and recommendation adopted*, 2011 WL 202298 (E.D. Mich. Jan. 21, 2011) (Friedman, J.). On the contrary, she explicitly testified that she contacted only defendant and "credit repair" companies about her credit; she did not contact any credit reporting agency. *See* Pl.'s Dep., at 108-09. Because plaintiff did not inform a credit reporting agency of the dispute, which in turn provided notice to defendant under § 1681i(2)(a), plaintiff has no viable FCRA claim against defendant. *See Townsend v. Bank of America, N.A.*, 445 Fed. Appx. 908, 909 (9th Cir. 2011) ("The district court properly dismissed the FCRA claims because . . . Townsend did not allege that he notified a credit reporting agency of his dispute, as required to triggers the duties set forth in 15 U.S.C. § 1681s-2(b)."); *Anderson v. EMC Mortg. Corp.*, 631 F.3d 905, 907 (8th Cir. 2011) ("Anderson's Complaint . . . failed to allege a triggering CRA notice and therefore failed to state a claim against EMC under the FCRA."); *Pinson v. Equifax Credit Information Servs., Inc.*, 316 Fed. Appx. 744, 751 (10th Cir. 2009) ("[B]ecause the amended complaint alleges only that the Pinsons–not any CRA–notified Capital One that its information was in dispute, the Pinsons failed to state a claim against Capital One under the FCRA."). Finally, plaintiff cannot assert a state law tort claim based on defendant's furnishing of or failure to remedy incorrect information in the credit report, as such a claim is expressly preempted by the FCRA. *See MacPherson v. JPMorgan Chase Bank, N.A.*, 665 F.3d 45, 47-48 (2d Cir. 2011) (discussing 15 U.S.C. §§ 1681h(e), 1681t(b)(1)(F)).

Finally, plaintiff has no viable claim for breach of contract. Under Michigan law, "[a] party

12

claiming a breach of contract must establish by a preponderance of the evidence (1) that there was a contract, (2) that the other party breached the contract and, (3) that the party asserting breach of contract suffered damages as a result of the breach." *Miller-Davis Co. v. Ahrens Const., Inc.*, 296 Mich. App. 56, 71, 817 N.W.2d 609, 619 (2012), *rev'd in part on other grounds*, 495 Mich. 161, ___ N.W.2d ___ (2014). Here, plaintiff cannot show that defendant breached the mortgage contract by initiating foreclosure proceedings. The mortgage expressly gave defendant the right to accelerate the loan upon default and, upon plaintiff's failure to cure the default, to sell the property. *See* Def.'s Br., Ex. E, ¶¶ 18, 22. The agreement further provides that forbearance by defendant does not constitute a waiver of its rights or remedies under the agreement. *See id.*, ¶ 12. It is undisputed that the repayment plan required plaintiff to begin making her regular monthly payments on December 15, 2009, and that plaintiff failed to do so. At that point, defendant was entitled to invoke its remedies under the mortgage agreement, including the power of sale. Thus, plaintiff cannot assert a viable breach of contract claim.

It is well established that a *pro se* complaint is entitled to a generous construction. *See Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("handwritten *pro se* document is to be liberally construed"); *Lyons v. Powell*, 838 F.2d 28, 31 (1st Cir. 1988). "[A] *pro se* complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Estelle*, 429 U.S. at 106 (quoting *Haines*, 404 U.S. at 520); *see also, Hughes v. Rowe*, 449 U.S. 5, 9-10 & n.7 (1980) (per curiam). "However, there are limits to the court's 'liberal construction' of a *pro se* complaint. For example, the court cannot rewrite a complaint to include claims that were never presented, 'conjure up unpled allegations' or 'create a claim.'" *Jones v.*

*Marcules*, No. , 2012 WL 691629, at *2 (W.D. Mich. Feb. 8, 2012) (quoting *Rogers v. Detroit Police Dep't*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report of Binder, M.J.)).   This court "may not rewrite [plaintiff's] complaint to include claims that were never presented," "construct the plaintiff's legal arguments for" her, or "create a claim" for her.   *Rogers*, 595 F. Supp. 2d at 766.   Construing the complaint as liberally as possible, and considering any arguable claim that could be asserted from the allegations in the complaint, it is clear that plaintiff has no viable legal cause of action for damages against defendant based on the facts alleged in the complaint.   Accordingly, the Court should grant defendant's motion for summary judgment.

D.    *Conclusion*

In view of the foregoing, the Court should grant defendant's motion for summary judgment.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b).   Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).   Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.   *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).   Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the

14

opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: June 26, 2014                         s/Paul J. Komives
                                             PAUL J. KOMIVES
                                             UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent was sent to parties of record on June 26, 2014, electronically and/or by U.S. Mail.

                                             s/Michael Williams
                                             Case Manager for the
                                             Honorable Paul J. Komives