UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LANETTE K. DAVIS,

       Plaintiff,

v.

PNC MORTGAGE, a division of
PNC BANK, N.A.,

       Defendant.
_____/

Case No. 13-CV-11737

HON. MARK A. GOLDSMITH

**OPINION AND ORDER (1) ACCEPTING THE REPORT AND RECOMMENDATION DATED JUNE 26, 2014 (Dkt. 32), (2) OVERRULING PLAINTIFF'S OBJECTIONS (Dkt. 34), (3) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. 20), and (4) DISMISSING THE CASE WITH PREJUDICE**

### I. INTRODUCTION

Plaintiff Lanette Davis, proceeding pro se, alleges that Defendant PNC Mortgage wrongfully foreclosed on her home, illegally sold that home at a Sheriff's sale on April 6, 2011, and engaged in "unsafe and unsound mortgage servicing and foreclosure practices." Compl. at 2 (cm/ecf page) (Dkt. 1-1). The matter is presently before the Court on the Report and Recommendation (R&R) issued by Magistrate Judge Paul J. Komives (Dkt. 32). In the R&R, the Magistrate Judge recommends granting Defendant's motion for summary judgment (Dkt. 20).

The procedural background, along with the standard of review and legal principles governing motions for summary judgment under Federal Rule of Civil Procedure 56, have been adequately set forth by the Magistrate Judge in his R&R. Plaintiff filed objections to the R&R

1

(Dkt. 34), Defendant filed a response (Dkt. 35), and Plaintiff filed a reply (Dkt. 37). The Court reviews de novo those portions of the R&R to which a specific objection has been made. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). For the reasons that follow, the Court accepts the recommendation contained in the R&R (Dkt. 32), overrules Plaintiff's objections (Dkt. 34), and grants Defendant's motion for summary judgment (Dkt. 20).

## II. BACKGROUND

### A. Factual Background

The R&R sets forth the following factual background of the case:

> On September 30, 2008, plaintiff Lanette K. Davis purchased a property located in Grosse Pointe, Michigan. The purchase was financed by a loan from National City Bank, the predecessor to defendant PNC Bank, in the amount of $179,171.00. The loan was secured by a mortgage on the property . . . . After plaintiff failed to make her scheduled monthly payments in December 2008 and January 2009, PNC agreed to a forbearance plan, permitting plaintiff to avoid default by making payments of $407 per month. This plan expired in May 2009, and a second plan was agreed to through September 2009. In October 2009, plaintiff and PNC agreed to a repayment plan. Under the plan, plaintiff was required to resume payment of her regular principal and interest amount of $1,132.49 beginning in December 2009, plus $407 per month through February 2010. Plaintiff continued to make the $407 payment each month through February 2010, but did not pay the regular mortgage payment of $1,132.49. Plaintiff has made no other payments on the mortgage. At her deposition, plaintiff testified that she received several letters from PNC in early December 2009 asserting that she was in default. Plaintiff claims that she contacted PNC regarding these letters, and was told they were sent in error and that she could ignore them. She was told that the repayment plan was still in effect. On April 19, 2010, PNC served notice on plaintiff that she was in default. Plaintiff applied for a loan modification, but PNC determined that she did not qualify for a loan modification. PNC then took steps to foreclose on the property pursuant to Michigan's foreclosure by advertisement statute, Mich. Comp. Laws §§ 600.3204 et seq. A Sheriff's sale was held on April 6, 2011, at which PNC purchased the property for $74,911.00. On October 11, 2011, after the statutory redemption period had expired, PNC transferred the

>property to the United States Secretary of Veterans' Affairs by warranty deed.
>
>On March 9, 2012, the Secretary commenced an eviction action in the Grosse Pointe Municipal Court. Plaintiff defended this action by asserting that (1) PNC did not comply with the notice provisions of Mich. Comp. Laws § 600.3220; (2) PNC did not properly service her loan; and (3) PNC wrongfully failed to give plaintiff a loan modification. The court found in favor of the Secretary, and entered a judgment of possession requiring plaintiff to vacate the property by April 16, 2012. On the date she was scheduled to vacate the property, plaintiff filed an appeal in the Wayne County Circuit Court, raising the three claims set forth above, and asking the circuit court to set aside the Sheriff's sale. On August 17, 2012, the circuit court entered an order granting plaintiff's requested relief and setting aside the Sheriff's sale. The circuit court concluded that PNC had failed to comply with Mich. Comp. Laws § 600.3220, which governs notice for adjournments of a Sheriff's sale. The court rejected plaintiff's argument that PNC had violated the law by declining to modify her loan. On November 20, 2012, PNC recorded an affidavit to set aside the foreclosure and reinstate the mortgage.

R&R at 1-3 (citations to record omitted).

### B. Overview of the Legal Analysis in the R&R

Although Plaintiff's complaint alleges that Defendant committed several wrongful acts, the Magistrate Judge recognized that she did not "indicate on what legal basis defendants [sic] are liable to her for monetary damages" or "how these acts damaged her[.]" Id. at 6. Nonetheless, the Magistrate Judge proceeded to examine the viability of any legal claim that he could arguably glean from Plaintiff's complaint.

The Magistrate Judge first addressed a claim for damages arising out of a violation of Mich. Comp. Laws § 600.3220. According to the Magistrate Judge, a violation of this statute does not provide a basis for damages against Defendant because "Michigan's foreclosure by advertisement statutes do not give a plaintiff a cause of action for damages." Id. (quotation marks and citations omitted).

The Magistrate Judge then concluded that Plaintiff could not assert any tort claim against Defendant. Id. The Magistrate Judge reasoned that, because a lender "owe[s] no duty outside of their contractual obligations to borrowers," Plaintiff could not establish that Defendant breached a duty that was "separate[ ] and distinct[ ] from the contractual agreement." Id. at 6-7 (citations omitted).

Next, the Magistrate Judge considered the viability of a claim for damages arising out of Defendant's failure to approve Plaintiff for a loan modification. Id. at 7. The Magistrate Judge concluded that the Home Affordable Modification Program ("HAMP") and its accompanying regulations do not "provide plaintiff with a private right of action against a mortgage servicer." Id. The Magistrate Judge also concluded that Plaintiff did not have any right to a modification under state law. Id.

The Magistrate Judge then turned his attention to the applicability of the statute of frauds and its effect on Plaintiff's possible claims. Id. Plaintiff claims that she had a telephone conversation with a PNC representative in December 2009, during which the representative agreed to a new repayment plan and future loan modification. Id. Plaintiff did "not allege that there was any written modification to the repayment plan." Id. Because Michigan's statute of frauds precludes claims against a financial institution to enforce the terms of this type of oral agreement, the Magistrate Judge concluded that any claim based on this conversation was barred by the statute of frauds. Id. at 7-8.

Insofar as Plaintiff alleged fraudulent misrepresentation regarding the default notices and her conversations with the PNC employee, the Magistrate Judge concluded that such claims were also barred by the statute of frauds. Id. at 8-9. The Magistrate Judge also noted that "an alleged broken promise of a future loan modification" is not actionable as fraud because the "fraudulent

4

misrepresentation must be predicated upon a statement relating to a past or an existing fact." Id. at 10 (citations omitted). The Magistrate Judge further stated that Plaintiff could not assert a claim of fraud based on the December 2009 conversations because she did not "show how she reasonably relied on any alleged misstatements to her detriment." Id. Regarding the default notices, the Magistrate Judge stated that Plaintiff did not assert how she could have relied on those statements because she had contacted Defendant and was told to disregard those notices. Id. According to the Magistrate Judge, "Plaintiff explicitly testified that she was told her repayment plan remained in effect, and that she knew that under the repayment plan she was obligated to make her regular scheduled payment of $1,132.49 on December 15, 2009." Id. Therefore, the Magistrate Judge concluded that Plaintiff cannot show that she reasonably relied on any alleged misstatements in the default notices. Id.

The Magistrate Judge then considered whether, under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., Plaintiff could assert a claim against Defendant based on alleged inaccuracies in her credit report caused by the foreclosure. Id. While noting that the FCRA imposes duties on those who furnish information to credit reporting agencies, the Magistrate Judge recognized that a private right of action for damages only exists when a furnisher of information "received notice from a consumer reporting agency, not the plaintiff," about a dispute regarding information in a credit report. Id. at 10-11. Here, the Magistrate Judge concluded that Plaintiff cannot assert a viable FCRA claim because she did not inform a credit reporting agency of the dispute. Id. at 12. In addition, the Magistrate Judge held that the FCRA expressly preempts any state law tort claim based on Defendant's furnishing of, or failure to remedy, incorrect information in the credit report. Id.

5

Finally, the Magistrate Judge addressed whether Plaintiff could assert a viable claim for breach of contract. Id. at 12-13. The Magistrate Judge found that Plaintiff was unable to show that Defendant had breached the mortgage contract when it initiated foreclosure proceedings. Id. at 13. According to the Magistrate Judge, it was "undisputed that the repayment plan required plaintiff to begin making her regular monthly payments on December 15, 2009, and that plaintiff failed to do so." Id. The mortgage "expressly gave defendant the right to accelerate the loan upon default and, upon plaintiff's failure to cure the default, to sell the property." Id. Thus, when Plaintiff failed to make her regular monthly payments, Defendant was free to "invoke its remedies under the mortgage agreement, including the power of sale." Id. Therefore, according to the Magistrate Judge, Plaintiff was unable to assert a viable breach of contract claim. Id.

Although a pro se complaint is entitled to a generous construction, the Magistrate Judge recognized that a court "may not rewrite plaintiff's complaint to include claims that were never presented, construct the plaintiff's legal arguments for her, or create a claim for her." Id. at 14 (brackets, quotation marks, and citation omitted). After considering any arguable claim that could be asserted from the allegations in the complaint, the Magistrate Judge held that Plaintiff had "no viable cause of action for damages against defendant based on the facts alleged in the complaint." Id. Therefore, the Magistrate Judge recommended that Defendant's motion for summary judgment be granted. Id.

### III. ANALYSIS

#### A. First Objection

At the outset, the Court notes that each of Plaintiff's objections begins with a bolded section drawn primarily from the R&R. The bolded section of the first objection paraphrases a portion of the R&R addressing breach of contract. Pl. Objs. at 1. However, Plaintiff puts forth a

6

variety of ambiguous arguments unrelated to a breach of contract, including that Defendant committed fraud, illegally sold the property in violation of Mich. Comp. Laws § 600.3220, and reported a foreclosure on Plaintiff's credit report in violation of the FCRA. Pl. Objs. at 2-3.

The Court finds that Plaintiff's objection is not sufficiently clear. Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995) ("[O]bjections must be clear enough to enable the district court to discern those issues that are dispositive and contentious."). At best, Plaintiff's vague, general, and conclusory objection constitutes a general objection to the R&R in its entirety. As such, the objection fails on its face. See, e.g., Drew v. Tessmer, 36 F. App'x 561 (6th Cir. 2002) ("The filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object."); Cole v. Yukins, 7 F. App'x 354, 356 (6th Cir. 2001) (same); Howard v. Sec'y of Health & Human Servs., 932 F.2d 505, 509 (6th Cir. 1991) ("A general objection to the entirety of the magistrate's report has the same effects as would a failure to object."); see also Rivet v. State Farm Mut. Auto. Ins. Co., 316 F. App'x 440, 449 (6th Cir. 2009) (refusing to address "arguments that . . . are unsupported or undeveloped").

Even if the Court were to construe Plaintiff's objection as specifically attacking the Magistrate Judge's conclusions that Plaintiff failed to state a claim, the Court finds that Plaintiff's arguments are not persuasive and lack merit. For the reasons provided below, the Court overrules Plaintiff's first objection to the extent it contends that Plaintiff has sufficiently alleged claims for breach of contract, fraudulent misrepresentation, violation of Michigan's foreclosure-by-advertisement statute, or violation of a furnisher's duties under the FCRA.

### 1. Breach of Contract

Plaintiff claims that she had a telephone conversation with a PNC representative in December 2009, during which the representative agreed to modify the October 2009 forbearance

agreement between the parties and accept lower monthly payments, and also agreed to an overall modification of the loan. Id. at 2-3. The Court understands Plaintiff's argument to be that Defendant breached this orally modified agreement when it initiated foreclosure proceedings despite Plaintiff's payments in December 2009, January 2010, and February 2010, in compliance with the alleged verbal repayment agreement. Id. at 2.

In support of this argument, Plaintiff references an October 2011 email she received from Ms. Fontasia Jefferies, an assistant loan technician at the VA. Id.; see also Jefferies Email, Ex. D to Pl. Resp. (Dkt. 26-3). Ms. Jefferies purportedly included a "response" she received from Defendant, which stated that the "plan was changed on 12/11/09 to reflect a total of 3 payments @ $407 each; $1221.00 total. [Plaintiff] paid the required payments on 12/16/09, 1/15/10, and 2/26/10[.]" Jefferies Email at 2 (cm/ecf page). According to Plaintiff, reporting to the VA that the "required" payments were made "proves there was another agreement, although verbal to the Plaintiff, but somewhere in PNC's system they were able to view that 'side agreement[.]'" Pl. Objs. at 2. Aside from referencing Ms. Jefferies's email, Plaintiff does not allege that there was any written modification to the repayment plan.

The Magistrate Judge concluded that Plaintiff was required to pay the regular mortgage amount plus a forbearance amount, as required by the October 2009 repayment plan. R&R at 1-2, 13. This conclusion is premised, on the Magistrate Judge's earlier conclusion that Michigan's statute of frauds bars any claims based on the alleged December 2009 verbal agreement. Id. at 7-8. Plaintiff's objection does not address the applicability of the statute of frauds to the oral agreement.

Upon de novo review, the Court agrees with the R&R's conclusion that Plaintiff cannot assert a viable claim for breach of contract. Under Michigan's statute of frauds, certain

8

contracts, agreements, or promises must be in writing to be valid and enforceable. See Mich. Comp. Laws § 566.132; Blackward Props., LLC v. Bank of Am., 476 F. App'x 639, 640 (6th Cir. 2012) ("A three-centuries-old product of English law, the statute of frauds bars courts from enforcing certain kinds of promises unless the parties put them in writing."). In particular, a financial institution's "promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan" or "waive a provision of a loan" will be unenforceable unless "the promise or commitment is in writing and signed with an authorized signature by the financial institution." Mich. Comp. Laws §§ 566.132(2)(b)-(c); see also Polidori v. Bank of Am., N.A., 977 F. Supp. 2d 754, 763 (E.D. Mich. 2013) (finding that subsection 2 "clearly and unambiguously imposes an evidentiary burden for any claims brought to enforce a promise or agreement by a financial institution."). Simply put, the statute of frauds prevents a party from bringing any action against a financial institution to enforce the terms of any oral promise or agreement. First Fed. Bank of the Midwest v. Baith, 501 F. App'x 368, 374 (6th Cir. 2012) ("The Michigan Statute of Frauds bars any action . . . against a financial institution when the plaintiff fails to provide a written, signed promise from the financial institution.") (citation omitted) (emphasis in original); Crown Tech. Park v. D&N Bank, FSB, 619 N.W.2d 66, 72 (Mich. App. 2000) (the statute of frauds "plainly states that a party is precluded from bringing a claim — no matter its label — against a financial institution to enforce the terms of an oral promise").

Here, Plaintiff's objection did not address how the oral agreement is not subject to the statute of frauds. Plaintiff concedes that the December 2009 agreement between herself and the PNC representative to pay only the forbearance amount and submit paperwork for a loan modification in the future was oral. Pl. Objs. at 2. Plaintiff does not dispute that Defendant

qualifies as a "financial institution," as defined under the statute of frauds.[1] Plaintiff also does not dispute that the nature of the promise in this case falls within the types of promises from a financial institution that must be in writing. Finally, Plaintiff does not dispute that her non-compliance with the October 2009 repayment plan could only be excused if its terms had been modified by the alleged December 2009 agreement – an oral agreement never reduced to a written promise signed by a representative of Defendant.

Although Plaintiff claims that the email she received from Ms. Jefferies constituted proof of the oral "side agreement," the email does not contain any language embodying a promise or commitment to modify or alter the terms of the repayment plan, nor was it signed by Defendant's representative. The email itself is ambiguous regarding whether there was a modification of the October 2009 repayment plan, and if so, what the modification may have been. In any event, because the email contains no written promise subscribed by the party to be charged, it cannot substantiate Plaintiff's breach-of-contract claim.

Since the oral agreement is void and unenforceable under the statute of frauds, Plaintiff's failure to make the regular monthly payment resulted in her default, which, in turn, entitled Defendant to exercise the acceleration clause in the mortgage agreement and the power of sale. See Mortgage at ¶¶ 18, 22 (Dkt. 20-6). Defendant complied with the provisions provided for in the mortgage agreement, and, therefore, the Court concludes that Plaintiff cannot assert a breach-of-contract claim.

Accordingly, the Court overrules this portion of Plaintiff's first objection.

### 2. Fraudulent Misrepresentation

---

[1] See Mich. Comp. Laws § 566.132(3) (defining "financial institution" as "a state or national chartered bank, a state or federal chartered savings bank or savings and loan association, a state or federal chartered credit union, a person licensed or registered under the mortgage brokers, lenders, and servicers licensing act.")

After referencing a conversation Plaintiff had with a PNC representative, in which she was told to only pay the forbearance amount and submit paperwork for a loan modification in February 2010, Plaintiff makes broad and conclusory statements that such conduct evidenced fraud. Pl. Objs. at 2-3. Plaintiff further states that there was no evidence that her loan modification was reviewed or decided upon, which, in her opinion, also evidenced fraud. Id. at 3. In the R&R, the Magistrate Judge concluded that claims of fraudulent misrepresentation were barred by the statute of frauds. R&R at 8-9.

Upon de novo review, the Court agrees with the R&R that Plaintiff cannot assert a viable claim for fraudulent misrepresentation. In order to establish a cause of action for fraudulent misrepresentation, a party must prove:

> (1) that the defendant made a material representation, (2) that the representation was false, (3) that when the defendant made the representation, the defendant knew that it was false, or made it recklessly without knowledge of its truth or falsity, (4) that the defendant made it with the intent that the plaintiff would act on it, (5) that the plaintiff acted in reliance on it, and (6) that the plaintiff suffered injury.

Gage Prods. Co. v. Henkel Corp., 393 F.3d 629, 645 (6th Cir. 2004) (quoting Eerdmans v. Maki, 573 N.W.2d 329, 332-33 (Mich. App. 1997)).

As previously noted, Michigan's statute of frauds prevents a party from bringing any action against a financial institution to enforce the type of oral promise at issue here. Baith, 501 F. App'x at 374 ("The Michigan Statute of Frauds bars any action . . . against a financial institution when the plaintiff fails to provide a written, signed promise from the financial institution.") (citation omitted) (emphasis in original); Crown Tech. Park, 619 N.W.2d at 72 (the statute of frauds "plainly states that a party is precluded from bringing a claim — no matter its label — against a financial institution to enforce the terms of an oral promise"). This includes

11

claims of fraudulent misrepresentation. See, e.g., Williams v. Pledged Prop. II, LLC, 508 F. App'x 465, 469 (6th Cir. 2012) (affirming dismissal of claims of misrepresentation and fraud against a financial institution in the absence of a written promise); McCann v. U.S. Bank, N.A., 873 F. Supp. 2d 823, 835-836 (E.D. Mich. 2012) ("Courts in this District have repeatedly held that misrepresentation claims based on alleged promises to modify home mortgages are barred by the Michigan Statute of Frauds.") (citations omitted). Because the statute of frauds bars claims of fraudulent misrepresentation against a financial institution that are based on certain oral promises or agreements, like those here, this is reason enough to overrule this portion of Plaintiff's objection.

Additionally, Michigan law requires that "an action for fraud must be predicated upon a false statement relating to a past or existing fact; promises regarding the future are contractual and do not support a claim for fraud." Bennett v. MIS Corp., 607 F.3d 1076, 1101 (6th Cir. 2010) (citing Hi-Way Motor Co. v. Int'l Harvester Co., 247 N.W.2d 813, 815 (Mich. 1976)). Under the "bad faith" exception, however, a party "may maintain a fraud action if a promise is made in bad faith without the intention to perform it." Blackward Props., LLC v. Bank of Am., 476 F. App'x 639, 643 (6th Cir. 2012) (applying Michigan law) (quotation marks and citation omitted). While "evidence of fraudulent intent must relate to conduct of the act at the very time of making the representations, or almost immediately thereafter[,]" Travis v. ADT Sec. Servs., Inc., 884 F. Supp. 2d 629, 640 (E.D. Mich. 2012) (quotation marks and citation omitted), "evidence of a broken promise is not evidence of fraud." Blackward, 476 F. App'x at 643.

Here, insofar as Plaintiff alleges that she was promised a future loan modification, the promise is not actionable as fraud, see Soto v. Wells Fargo Bank, N.A., No. 11-14064, 2012 WL 113534, at *7 (E.D. Mich. Jan. 13, 2012), unless Defendant made the promise in bad faith with

no present intent to perform it. Plaintiff has failed to provide any evidence creating a genuine issue of material fact that, when Defendant allegedly promised in December 2009 to modify the loan in February 2010, it had no present intent of doing so. Even assuming there was a promise to modify Plaintiff's loan in the future, at most, Plaintiff has shown the future promise of modification was broken, which is not evidence of fraud.

Accordingly, the Court overrules this portion of Plaintiff's first objection.

### 3. Notice for Adjournments of a Foreclosure Sale Under Mich. Comp. Laws § 600.3220

Plaintiff goes on to assert that Defendant did not abide by the notice requirements for the adjournment of a foreclosure sale under Mich. Comp. Laws § 600.3220. Pl. Objs. at 3. Plaintiff prevailed on this claim in state court and the foreclosure sale was set aside. See Wayne Cnty. Cir. Ct. Op. at 14, 16 (Dkt. 20-22). Plaintiff is now seeking monetary damages for the notice violation. Compl. at 5 (cm/ecf page). The Magistrate Judge concluded that, even if Defendant failed to provide notice of the adjourned sale, Michigan's foreclosure by advertisement statutes do not give Plaintiff a viable claim for damages. R&R at 6.

Upon de novo review, the Court finds that dismissal of this claim would be appropriate under Federal Rule of Civil Procedure 8, and, as such, the Court need not address the reasoning employed in the R&R.[2] Rule 8 requires that the complaint contain "a short and plain statement

---

[2] In support of the conclusion that a violation of Michigan's foreclosure-by-advertisement statute does not afford Plaintiff a cause of action for damages, the Magistrate Judge relied upon authority involving alleged loan modification violations under Mich. Comp. Laws § 600.3205a et seq. See R&R at 6 (quoting Stroud v. Bank of Am., N.A., No. 13-10334, 2013 WL 3582363, at *8 (E.D. Mich. July 12, 2013) (quoting Dingman v. One West Bank, FSB, 859 F. Supp. 2d 912, 922 (E.D. Mich. 2012))). However, these sections of the foreclosure-by-advertisement statute have been repealed. The Court is not convinced that a property owner cannot, under any circumstance, assert a claim for money damages for improper notice of an adjourned foreclosure sale.

13

of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Twombly v. Bell Atlantic Corp., 550 U.S. 544, 570 (2007). While the pleading standard of Rule 8 "does not require detailed factual allegations," it still "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). A complaint that "tenders naked assertions devoid of further factual enhancement" will not suffice. Id. (brackets, quotation marks, and citation omitted).

Here, Plaintiff's complaint stated that she was "prejudiced" by Defendant's lack of notice regarding the adjournment of the foreclosure sale, and she requested monetary damages in the amount of "$125,000 plus lost equity which is $141,573.26 as of the date this lawsuit was filed less missed payments, interest and property taxes paid by the defendant." Compl. at 3, 5 (cm/ecf pages). This naked assertion of harm is not sufficiently clear; Defendant is left to guess as to the injury that provides the basis for recovery. This is especially so given that the foreclosure sale was already set aside by the state court. In such circumstances, it is difficult to fathom what possible injury Plaintiff may have suffered. Even affording a liberal reading to Plaintiff's complaint, Plaintiff fails to satisfy this minimal standard.

Accordingly, the Court overrules this portion of Plaintiff's first objection.

### 4. Duties of Furnishers of Information Under the FCRA

Lastly, Plaintiff argues that Defendant's reporting of a foreclosure on her credit report violated the FCRA. Pl. Objs. at 4. According to Plaintiff, the denial of her Parent PLUS educational loan was due to Defendant's reporting of the foreclosure. Id. The Magistrate Judge concluded that Plaintiff cannot assert a viable FCRA claim because, under the statute, a

furnisher's liability is only triggered by the furnisher's disregard of a notice of dispute sent by the credit reporting agency based on a complaint submitted by the consumer, neither of which circumstance occurred here. R&R at 12. Plaintiff does not address this conclusion in the objection.

Upon de novo review, the Court agrees with the R&R that Plaintiff cannot assert a viable FCRA claim against Defendant based on the alleged inaccuracies in her credit report caused by the foreclosure. The FCRA exists "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." Safeco Ins. Co. v. Burr, 551 U.S. 47, 52 (2007). In order to prevent furnishers of information from providing inaccurate consumer-credit information, 15 U.S.C. § 1681s-2 creates two obligations. First, a furnisher has a duty to provide accurate information to credit reporting agencies. § 1681s-2(a). Second, upon receiving notice from a credit reporting agency, a furnisher must respond to disputes about the furnished consumer information. § 1681s-2(b).

While the FCRA "unquestionably creates a private right of action," the Sixth Circuit has concluded that such an action is limited to violations of § 1681s-2(b). Boggio v. USAA Fed. Sav. Bank, 696 F.3d 611, 615-616 (6th Cir. 2012). Thus, in order to assert a cause of action against Defendant for violating the FCRA, Defendant must have received notice of the dispute from a credit reporting agency. Id. ("[C]onsumers may step in to enforce their rights only after a furnisher has received proper notice of a dispute from a [credit reporting agency]."); see also Brown v. Wal-Mart Stores, Inc., 507 F. App'x 543, 547 (6th Cir. 2012) ("A private cause of action against a furnisher of information does not arise until a consumer reporting agency provides proper notice of a dispute. Directly contacting the furnisher of credit information does not actuate the furnisher's obligation to investigate a complaint." (citations omitted)). In this

15

case, Plaintiff has failed to allege that she filed a dispute with a credit reporting agency, or that Defendant received notice of the dispute from a credit reporting agency. Therefore, Plaintiff has no claim under the FCRA.

Accordingly, the Court overrules this portion of Plaintiff's first objection.

### B. Second Objection

In her second objection, Plaintiff appears to object to the R&R's conclusion that Plaintiff failed to pay her regular mortgage payment amount plus a forbearance amount for three months beginning in December 2009, as required by the October 2009 repayment plan. Pl. Objs. at 4. In support of this objection, Plaintiff merely restates verbatim the exact same arguments put forth in her first objection. See id. at 4-6. For the reasons provided above regarding Plaintiff's first objection, the Court finds that Plaintiff's second objection lacks merit and is overruled.

### C. Third Objection

In her third objection, Plaintiff first argues that the R&R failed to identify a party in a prior action by its "complete name." Pl. Objs. at 7.[3] Plaintiff then argues that the R&R did not include the hearing transcript on a Motion to Stay the Eviction, "which can be used as a material fact to support the Plaintiff's triable issues." Id. Lastly, Plaintiff argues that the "Wayne County Circuit Court's opinion and order is [a] material fact that can be used as evidence that PNC did not have legal standing to foreclose and is a triable issue in which a jury can return a verdict." Id. However, Plaintiff does not explain how any of these frivolous and conclusory arguments

---

[3] In the R&R, the Magistrate Judge wrote, "On October 11, 2011, after the statutory redemption period had expired, PNC transferred the property to the United States Secretary of Veterans' Affairs by warranty deed." R&R at 2. In the very next sentence, to which Plaintiff objects, the Magistrate Judge wrote, "On March 9, 2012, the Secretary commenced an eviction action in the Grosse Pointe Municipal Court." Id.

16

actually creates a genuine issue of material fact or constitutes a viable claim against Defendant in this case.

Upon de novo review, the Court finds that these arguments are unsupported and undeveloped, Rivet, 316 F. App'x at 449 (refusing to address "arguments that . . . are unsupported or undeveloped"), and, therefore, the objection lacks merit.

Accordingly, the Court overrules Plaintiff's third objection.

### D. Fourth Objection

In her fourth objection, Plaintiff refers to the portion of the R&R concerning burden-shifting under standard summary-judgment analysis. Pl. Objs. at 7; see R&R at 5 ("Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue." (quotation marks and citations omitted)). Plaintiff's objection, however, does not challenge the correctness of this legal principle. Rather, Plaintiff states that she has "provided a preponderance of evidence" supporting her claims that Defendant "committed fraud, did not have legal standing to foreclose because the loan was not in default, and the Defendants [sic] knowingly giving authority to another entity to service her mortgage continued to report foreclosure on her credit report." Pl. Objs. at 8. The Court interprets Plaintiff's objection as raising the same arguments put forth in her first objection. For the reasons provided above regarding Plaintiff's first objection, the Court finds that this objection lacks merit.

Accordingly, the Court overrules Plaintiff's fourth objection.

### E. Fifth Objection

In her fifth objection, Plaintiff objects to the R&R's conclusion that she failed to show how she reasonably relied on a December 2009 conversation with a PNC representative to her

17

detriment. Id. at 9. According to Plaintiff, she made the "required" payments of $407 until February 2010, based upon the statements made by Defendant's representative during the December 2009 telephone conversation. Id. Relying on these misstatements was purportedly detrimental, as Plaintiff was "pushed . . . into active foreclosure." Id. at 10. Because the Court has already concluded that Michigan's statute of frauds bars claims of fraudulent misrepresentation against a financial institution based on oral promises or agreements of this nature, this objection is moot.

In addition, Plaintiff again raises the FCRA issue. For the reasons provided above regarding Plaintiff's first objection, the Court finds that this portion of the objection lacks merit.

Accordingly, the Court overrules Plaintiff's fifth objection.

### F. Sixth Objection

In her sixth objection, Plaintiff objects to the R&R's stated amount of monetary damages sought by Plaintiff in this case. Pl. Objs. at 10-11. The R&R provides that "Plaintiff seeks over $500,000.00 in monetary damages[.]" R&R at 3. According to Plaintiff, she seeks "$392,040.00, less missed payments, interest and property taxes paid by the Defendant." Pl. Objs. at 11. Because the objection does not address the viability of any legal claim or the existence of a genuine issue of material fact that has any significance on liability in this case, this objection lacks merit.

Accordingly, the Court overrules Plaintiff's sixth objection.

### IV. CONCLUSION

For the reasons set forth above, the Court accepts the recommendation contained in the R&R (Dkt. 32), overrules Plaintiff's objections (Dkt. 34), grants Defendant's motion for summary judgment (Dkt. 20), and dismisses the case with prejudice.

SO ORDERED.

Dated: September 22, 2014                 s:\Mark A. Goldsmith
      Detroit, Michigan               MARK A. GOLDSMITH
                                         UNITED STATES DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 22, 2014.

                                         s/Johnetta M. Curry-Williams
                                         JOHNETTA M. CURRY-WILLIAMS
                                         CASE MANAGER